## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.  03-80849-CIV-MIDDLEBROOKS

THE FULTON COUNTY ADMINISTRATOR
FOR THE ESTATE OF LITA McCLINTON
SULLIVAN,

      Plaintiff,

vs.

MICHAEL BLANK and JULIUS BAER BANK, LTD.

      Defendants.

_____/

### AMENDED REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Defendants' Motion to Dismiss the

Amended Complaint Pursuant to federal Rules of Civil Procedure 12(b)(6) and 9(b)

(D.E. #39). This matter was referred to the undersigned United States Magistrate

Judge by the Honorable Donald M. Middlebrooks, United States District Judge, for

Report and Recommendation.   For the following reasons the undersigned

respectfully recommends Defendants' Motion be granted.

---

[1] This Report and Recommendation is being amended only insofar as it relates to Plaintiff's state law claims.  In all other respects the initial Report and Recommendation remains unchanged.

1



## BACKGROUND

Plaintiff, the Fulton County Administrator for the Estate of Lita Sullivan (the "Administrator"), has filed the instant action against Defendants Julius Baer Bank, Ltd., and its employee and purported agent, Michael Blank, alleging numerous claims. Plaintiff's First Amended Complaint is 40 pages in length and contains 10 Counts: Counts I through VIII of the First Amended Complaint allege Federal and Florida Rico claims against Defendants pursuant to 18 U.S.C. §1962 et seq. and Fla. Stat. §772.103 et seq.; Count IX of the First Amended Complaint alleges a claim against Defendants for fraudulent transfer of assets to avoid creditors; and Count X alleges a claim against Defendants for what Plaintiff labels "interference with property." The gravamen of the First Amended Complaint is the allegation that Julius Baer Bank and its purported agent Michael Blank ("Blank") together with non-parties James Vincent Sullivan ("Sullivan" or "James Sullivan"), and Andreas Schurti ("Schurti"), a citizen and resident of the Principality of Lichenstein, "participated in the establishment" of offshore trusts and accounts for James Sullivan with the knowledge that Sullivan, a bank client, was using them to conceal funds from the estate of his wife, Lita McClinton Sullivan, whom Sullivan allegedly murdered in January of 1987. First Am. Compl. ¶¶ 24, 34, 36.

The relevant background of this case, as alleged in the First Amended Complaint, is as follows. On February 24, 1994, the Administrator obtained a civil

2

judgment against James Sullivan in the amount of $4 million for the wrongful death of Sullivan's wife, Lita McClinton Sullivan. Id. at ¶18. On April 23, 1998, James Sullivan was indicted for his wife's murder and law enforcement authorities subsequently obtained an international fugitive warrant for Sullivan's arrest. Id. at ¶22. Plaintiff alleges that at or about this time Sullivan moved from Costa Rica to Bangkok, Thailand, where he resided until he was captured on July 2, 2002. Id. at ¶¶21-23. At the time of the filing of the First Amended Complaint, Sullivan was allegedly awaiting extradition on the pending state murder charge. Id. at ¶23.

According to the First Amended Complaint, some time after the murder of his wife, Sullivan established a corporation organized under the laws of the British Virgin Islands, known as Nicola Resources Inc., which had no legitimate business or business purpose. First Am. Compl. ¶33. Thereafter, Sullivan, along with Defendant Blank, acting as agent for Julius Baer Bank, LTD., and non-party Nicola Shurti, a resident of Lichtenstein, "utiliz[ed]" Nicola Resources "to establish a trust in the country of Lichtenstein, ... known as the WalPart Trust," the purpose of which was "to conceal the existence, identity and location of property under Sullivan's control which lawfully belonged to his creditors" and to "further [Sullivan's interest] ... to avoid arrest, prosecution, and payment of the lawful claims of his creditors." Id. at 34-35. According to the First Amended Complaint, Defendant Blank, is an employee and agent of Bank Julius Baer Company, Ltd. ("Julius Baer-Florida"), which is a Florida Corporation and "the actual, implied, or apparent agent and International

3

Representative Office of Bank Julius Baer & Company Ltd. Of Zurich, Switzerland ("Julius Baer-Switzerland") (Julius Baer-Florida and Julius Baer-Switzerland shall collectively be referred to as "Julius Baer Bank"). First Am. Compl. ¶¶9-10, 13. The First Amended Complaint alleges that Blank, as agent of Julius Baer Bank, "aided and abetted Sullivan ... and participated in the establishment of the trust [in Lichtenstein]" with knowledge of Sullivan's intent to use this trust to hide his assets from his creditors. Id. at 36. The First Amended Complaint goes on to allege that Julius Baer Bank "managed" several "accounts" for Schurti and the WalPart Trust to conceal Sullivan's assets and that "Sullivan, Blank and Schurti ... are continuing to use the WalPart Trust to conceal the existence, identity, and location of property under Sullivan's control," and to make them "available ... for his use and benefit." Id. at 37, 39.

## LEGAL ANALYSIS

Defendants predicate their request for dismissal of the Complaint on Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. When a federal court considers a Rule 12(b)(6) or 9(b) motion of dismissal at the pleading stage, the court must apply the Federal Rules of Civil Procedure and not the state law in question. Scarfato v. Nat'l Cash Register Corp., 830 F. Supp. 1441, 1442 (M.D. Fla. 1993)(citing Southeast Banking Corp. v. Bassett, 827 F. Supp. 742 (S.D. Fla. 1993); Airlines Reporting Corp. v. Atlantic Travel Service, Inc., 841 F. Supp. 1166, 1167 (S.D. Fla. 1993)). Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, a

4

complaint shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Caster v. Hennessey, 781 F.2d 1569, 1570 (11th Cir. 1986). Courts have interpreted this standard liberally. While the pleading must be sufficient to give the defendant fair notice of what the claim is and the grounds upon which it rests, the pleading is not required to set forth the detailed facts upon which the claim is based. Conley v. Gibson, 355 U.S. 41, 47 (1957). The parties may, through discovery, inquire further into the details underlying the claim. Bazal v. Belford Trucking Co., Inc., 442 F. Supp. 1089, 1102 (S.D. Fla. 1977). The Eleventh Circuit has recognized "the well-established policy in the federal courts favoring liberal pleading requirements." Warner v. Alexander Grant & Co., 828 F.2d 1528, 1531 (11th Cir. 1987).

As to the viability of a cause of action the court must accept all well-pleaded allegations of the complaint as true, and all ambiguities or doubts concerning sufficiency of the claim must be resolved in favor of the pleader. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Lowell v. American Cyanamid Co., 177 F.3d 1228, 1229 (11th Cir. 1999). Consideration of matters beyond the four corners of the Complaint is improper. Milburn v. United States, 734 F.2d 762 (11th Cir. 1984); Thomas v. Burlington Industries, Inc., 769 F. Supp. 368, 370 (S.D. Fla. 1991). Furthermore, the court cannot dismiss unless it appears beyond doubt that under no set of facts can plaintiff state a claim which would entitle it to relief. Hunnings v. Texaco, Inc., 29 F.3d 1480, 1484 (11th Cir. 1994); Bradberry v. Pinellas County, 789

F.2d 1513, 1515 (11th Cir. 1986); In re Asbestos Litigation, 679 F. Supp. 1096, 1098 (S.D. Fla. 1987).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); In re Asbestos Litigation, 679 F. Supp. at 1098.

## RICO CLAIMS

The first eight counts of the First Amended Complaint sound in RICO.  Counts I-IV allege RICO claims pursuant to 18 U.S.C. §1962(a)-(d), respectively, and Counts V-VIII allege RICO claims pursuant to Fla. Stat. §772.103(1)-(4), respectively.[2] Defendants raise several arguments in support of dismissal of these claims. Because this Court finds the First Amended Complaint fails to allege, and under the facts stated cannot allege, any proper predicate act,  thus subjecting the RICO counts to dismissal for failure to state a claim, the following discussion shall be so limited.

A §1962(a) violation requires the plaintiff to show "the receipt of income from a pattern of racketeering activity, and the use of that income in the operation of an enterprise." Morgan v. Bank of Waukegan, 804 F.2d 970, 972-73 (7th Cir.

---

[2] The Florida RICO counts shall be analyzed consistent with federal RICO law as "Florida's RICO Act is modeled after the federal act,, such that Florida courts should look to federal courts for guidance in interpreting and applying the state act and should accord great weight to federal decisions." Florida v. Gusow, 724 So.2d 135, 137 (Fla. 4th DCA 1998). Accord All Care Nursing Serv. Inc. v. High Tech Staffing Serv. Inc., 135 F.3d 740, 745 (11th Cir. 1998); Jones v. Childers, 18 F.3d 899, 910 (11th Cir. 1994).  Thus, dismissal of the federal RICO counts would translate into dismissal of the Florida RICO counts and visa versa.

1986)(emphasis added). To establish a §1962(b) violation the plaintiff must demonstrate the defendant "through a pattern of racketeering activity" "acquire[d] or maintain[ed]...any interest in or control" of an "enterprise". 18 U.S.C. §1962(b)(emphasis added). To prevail on a claim for violation of 18 U.S.C. §1962(c), a RICO plaintiff must demonstrate "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)(emphasis added)(footnote omitted). A §1962(d) violation requires proof that defendant conspired to violate any of the provisions of subsection (a), (b) or (c) of §1962. 18 U.S.C. §1962(d).

Reduced to their simplest terms, these subsections provide a remedy to a plaintiff who can prove that a defendant: (1) caused an injury to the plaintiff's business or property as the result of (2) the conduct of (3) an enterprise (4) through a pattern of (5) racketeering activity. See Hibiscus Assoc. v. Bd. Of Trustees, 50 F.3d 908, 920 (11th Cir. 1995). "Common elements are present in all four [RICO] subsections." Crowe v. Henry, 43 F.3d 198, 204 (5th Cir. 1995). "These common elements teach that any RICO claim necessitates (1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." Id. Once those fundamental prerequisites are satisfied, the Court may then move on to a determination of the substantive requirements of each respective subsection. St. Paul Mercury Ins. Co. v. Williamson, 224 F.3d 425, 439 (5th Cir. 2000).

Although the RICO subsections vary in some of their requirements, to properly state a claim, each requires the plaintiff to allege a "pattern of racketeering activity," which in turn requires the plaintiff to allege that the defendant committed at least two predicate acts, within a ten-year time span. Sedima,S.P.L.R. v. Imrex,Co., 473 U.S. 479, 495-96 (1985); Fla. Stat. §772.103. In so doing the plaintiff must allege sufficient facts "with enough specificity to show that there is probable cause the [predicate] crimes were committed." Jackson v. Bellsouth Telecomms., Inc., 181 F.Supp. 2d 1345, 1347 n.11 (S.D. Fla. 2001)(quoting Banco de Desarrollo Agropecuario, S.A. v. Gibbs, 640 F.Supp. 1168, 1175 (S.D. Fla. 1986)). In this case the alleged predicate acts are various unspecified acts of mail fraud and wire fraud stemming from alleged communications, the content of which are not specified, between and among the Defendant Blank and the non-parties Schurti and Sullivan, and money laundering allegedly of the "proceeds" of the murder of Lita McClinton Sullivan. For the reasons discussed below, each of the predicate acts alleged are invalid and therefore incapable of supporting a RICO claim.

The fatal defect in Plaintiff's attempt to allege valid mail and wire fraud is the Plaintiff's express and unambiguous disclaimer, in both the Amended Complaint and more recently in the Response Brief, of any reliance on any misrepresentation made as part of the purported "fraudulent scheme" to conceal Sullivan's assets. Except for their jurisdictional bases, the substantive elements of mail and wire fraud are identical. See Beck v. Prupis, 162 F.3d 1090, 1095 (11th Cir. 1998). Mail or wire

fraud occurs when a person: (1) intentionally participates in a scheme to defraud another of money or property; and, (2) uses the mails or wires in furtherance of that scheme. Pereira v. United States, 347 U.S. 1, 8 (1954).

Eleventh Circuit law is well established that to demonstrate a violation of the mail or wire fraud statutes for purposes of establishing a RICO predicate act, Plaintiff must show not only that Defendants "had a conscious, knowing intent to defraud," but that Plaintiff "*relied to his detriment on misrepresentations made in furtherance of that scheme*." Pelletier v. Zweifel, 921 F.2d 1465, 1499-1500, 1503 (11th Cir.1991)(emphasis added).  Thus, in order to establish proximate causation in a civil RICO action predicated on mail or wire fraud, the purported victim must make the same showing of reasonable reliance that is required for establishing injury from common law fraud.  Pelletier, 921 F.2d at 1499 ("Mail and wire fraud, just like common law fraud, ... entail 'an intention to induce the [victim] to act or to refrain from action *in reliance upon the misrepresentation*.'")(emphasis added) (citing Prosser and Keeton on Torts 728 (5th ed.1984)); Byrne v. Nezhat, 261 F.3d 1075, 1110 & n.73 (11th Cir. 2001)(explaining that the Eleventh Circuit adheres to "the more restrictive view" among circuits that a plaintiff "lacks standing to assert, as a basis for mail fraud, misrepresentations directed toward another person or entity."); Beck v. Prupis, 162 F.3d 1090,1095 (11th Cir. 1998)(stating that RICO claims based on mail or wire fraud require that the plaintiff "prove that a reasonable person would have relied on the misrepresentation"), aff'd, 529 U.S. 494 (2000); Sikes v. Teleline,

9

Inc., 281 F.3d 1350, 1360 (11th Cir. 2002)(noting that , "when a plaintiff brings a civil RICO case predicated upon mail or wire fraud, he must prove that he was 'a target of the scheme to defraud' and that he 'relied to his detriment on misrepresentations made in furtherance of that scheme')(quoting Pellitier, 921 F.2d at 1499-1500), cert. denied, 537 U.S. 884 (2002).

The Eleventh Circuit is not alone in requiring RICO claimants alleging predicate acts of mail or wire fraud to allege detrimental reliance on representations made in furtherance of the scheme in order to satisfy RICO's proximate cause requirements. See, e.g., In re EDC, Inc., 930 F.2d 1275, 1280 (7th Cir.1991) (stating that the civil RICO claimants in the case, "can complain only of misrepresentations which were made to them and on which they reasonably relied"); Chisolm v. TranSouth Financial Corp., 95 F.3d 331, 337 (4th Cir.1996) (holding that where a RICO plaintiff alleges predicate acts of mail and wire fraud as a proximate cause of the plaintiff's injury "the plaintiff must have justifiably relied, to his detriment, on the defendant's material misrepresentation"). The rule makes eminent sense as it gives force to the provision of the RICO Act permitting suits by private parties,[3] which by its terms requires any private plaintiff to demonstrate injury "by reason of" racketeering activity. See Sikes, 281 F.3d at 1360. Under this rule an injury inflicted upon the plaintiff only indirectly by the predicate acts cannot serve as the basis for

---

[3] 18 U.S.C. §1964(c)

RICO relief. See Holmes v. Sec. Investor Protection Corp., 503 U.S. 258, 268 (1992)(standard is one of proximate, and not but-for, causation, an application of the traditional rule that "a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover").

Despite the clear and unambiguous Eleventh Circuit authority referenced above, which requires a RICO plaintiff alleging predicate acts of mail and wire fraud to allege detrimental reliance on the defendant's material misrepresentation, Plaintiff makes the absurd contention, in her Reply Brief, that "mail and wire fraud do not require proof that misrepresentations were made to the Plaintiff or relied on by the plaintiff." Plaintiff's Response Brief, pg. 20. While Plaintiff's statement may be true insofar as straight violations of the mail and wire statutes go, it is clearly not the case in this Circuit, or in the majority of circuits for that matter, in the context of a RICO claim. The lengthy discussions in the above-referenced cases plainly make this point. Thus, Plaintiff's selective quotes from Pelletier, 921 F.2d at 1499-1500, which fail to acknowledge the portion of the opinion in which the Court states, "when the alleged predicate act is mail or wire fraud, the plaintiff must have been a target of the scheme to defraud and must have relied to his detriment on misrepresentations made in furtherance of that scheme," are to no avail.

In the case sub judice, Plaintiff admitted at ¶60 of her Amended Complaint that "[t]he fraudulent scheme did not involve any misrepresentations of fact to the

Plaintiff, so none were made or relied on," and later conceded, at page 22 of her Response Brief, that there were "[no] communications at all to the Plaintiff" by the Defendants. In light of these admissions, it is impossible for the Plaintiff to state the crucial elements of any mail or wire fraud predicates.

The money laundering predicate must also be dismissed because there are no factual allegations in the Amended Complaint supporting the legal conclusion that the amounts allegedly transferred constituted "proceeds" of Lita Sullivan's murder. Paragraph 66 of the Amended Complaint tracks the language of 18 U.S.C. §1956 and alleges that Defendants "knowingly ... conducted financial transactions involving proceeds of specified criminal activity, i.e. murder" either: (1) while "knowing that the transaction was designed and intended to conceal ... the nature, location, source, ownership, or control of such proceeds;" or (2) "to avoid a transaction reporting requirement under State or Federal law." The subsections of §1956, invoked by the Amended Complaint, are subsections (a)(1)(A)(I) and (ii), and require that the funds or property involved in the "financial transaction[s]" involve "proceeds of specified unlawful activity." 18 U.S.C. §1956(a)(1); Eleventh Circuit Pattern Jury Instructions (Criminal), Instr. 70.2 at 372 (2003 ed.).

In the instant case, there is no allegation in the Amended Complaint setting forth facts which establish that the funds allegedly transferred to WalPart or Julius Baer were "derived from" the murder. Indeed, the allegations in the Amended Complaint seem to indicate that the funds allegedly transferred were funds belonging

to Sullivan before the murder, and to which Sullivan's wife never had any claim. The law is clear that in considering a motion to dismiss, a court "will not accept, without more, conclusory allegations or legal conclusions masquerading as factual conclusions." Jackson v. Bellsouth Telecomms., Inc., 181 F.Supp.2d 1345, 1361 (S.D. Fla. 2001).

Plaintiff's cause is not aided by the allegation contained in Paragraph 24 of the Amended Complaint that by virtue of having allegedly murdered his wife, Sullivan "was presumed by law to have pre-deceased her," such that "*all* of his property and assets became property of her estate" before the alleged transfers. (emphasis added). As a preliminary matter, Sullivan has not been found guilty of Lita Sullivan's murder. Therefore, any so-called legal "presumption," even if it were applicable, would not as yet apply. Furthermore, there is substantial doubt about whether Plaintiff's legal assertion is even an accurate statement of the law. Presumably, Georgia law would apply in that Lita Sullivan was murdered in Georgia, and the Georgia Court is administering her estate. Am. Compl. ¶¶1, 16, 17. The applicable Georgia Statute, GA Code Ann. §53-1-5 (1997), merely prevents a murdering spouse from inheriting anything he or she "otherwise" might have inherited, i.e., absent the murder. See Keith v. Johnson, 440 S.E. 2d 230, 232-33 (Ga. Ct. App. 1993). As the Court in Keith observed, the Georgia Code disinherits a murderer, but does not make "the victim ... the heir of the murderer." Id. at 233.

13

Plaintiff attempts to cure this defect in her Reply Brief by arguing that Georgia law does not apply, and the interaction of Fla. Stat. §37.802(sic) and §61.075 allowed Sullivan wrongly to acquire, allegedly by murdering his wife, the "half" of their co-mingled assets which she could have acquired in the divorce proceedings, absent the intervening murder. Plaintiff's Response Brief, pg. 13. This too offers Plaintiff no refuge. Apart from there being no allegation in the Amended Complaint that Florida Law governs the issue of Lita Sullivan's marital property or her inheritance, the applicability of Georgia law to the issue seems obvious in that not only is the Georgia Probate Court administering her estate, but the divorce proceedings occurred in Geogia, not Florida. In any event there is nothing in the Amended Complaint to support Plaintiff's new assertion, raised for the first time in her Reply Brief, that assets were in fact "co-mingled" during the marriage. Accordingly, this Court finds the Amended Complaint's conclusory assertion of the laundering of some unspecified "proceeds," insufficient to state a RICO predicate act money laundering claim.

In summary, it is manifest that unless a false or misleading misrepresentation is made to, and relied on by the plaintiff, or the plaintiff is misled by a failure to speak under circumstances where there is a duty to speak, none of which has been alleged in the Amended Complaint, there can be no valid claim of mail or wire fraud. Pelletier, 921 F.2d at 1499-1500. In light of Plaintiff's admissions that she never relied on any misrepresentations of Defendants, it is impossible for the Plaintiff to

14

state the crucial elements of any mail or wire fraud predicates.  Plaintiff's only

remaining predicate act asserted, money laundering, is also subject to dismissal in

that there are no factual allegations in the Amended Complaint, nor based upon the

facts pled, could there be, supporting the legal conclusion that the amounts allegedly

transferred constituted "proceeds" of Lita Sullivan's murder.  Accordingly this Court

recommends that Defendants' Motion to Dismiss Plaintiff's RICO claims pursuant to

Rule 12(b)(6) for failure to state a claim be granted for failure to allege a valid

predicate act.[4]

## STATE LAW CLAIMS

## Count IX-Fraudulent Transfer Of Assets To Avoid Creditors

---

[4] It is up to the District Court whether such dismissal should be with or without prejudice. The District Court may determine that any proposed amendment would be futile and thus, in the interest of justice, should not be permitted. The Eleventh Circuit uses the abuse of discretion standard when reviewing a district court's decision on whether to grant a motion for leave to amend the pleadings. Diesel "Repower," Inc. v. Islander Investments LTD, 271 F.3d 1318, 1321 (11th Cir. 2000)(citing Thomas v. Farmville Mfg. Co., Inc., 705 F.2d 1307 (11th Cir.1983)). Fed.R.Civ.P 15(a) provides that the court must grant a litigant's motion for leave to amend the pleadings "when justice so requires." In Foman v. Davis, 371 U.S. 178, 182 (1962), the Supreme Court reasoned that "[i]n the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be "freely given." Thus, the district court may deny leave to amend the complaint where, as can be argued here, the amendment would be futile. Id.

Count IX of the Amended Complaint seeks damages under the catch-all provision of the Uniform Fraudulent Transfer Act, Fla. Stat. §726.108(1)(c)(3).[5] The limited scope of liability under UFTA's catch-all provision has recently been explained by the Florida Supreme Court in the newly-decided case, Freeman v. First Union Nat'l Bank, 2004 WL 178598 (Fla. Jan. 29, 2004), to exclude liability for tort damages against a bank for aiding and abetting a fraudulent transfer.

In Freeman, the Florida Supreme Court ruled that the catch-all provision upon which Plaintiff relies in this case is not a basis for a damages claim for aiding and abetting a fraudulent transfer. The question certified to the Florida Supreme Court in Freeman was whether a bank which knowingly facilitated the fraudulent transfer of monies, by aiding a client to wire ill-gotten funds to Lichtenstein, could be held liable for tort damages under Florida's enactment of the UFTA on an aiding and abetting theory. Answering in the negative, the Florida Supreme Court ruled that the catch-all provision did not provide a remedy for tort damages against a bank for aiding and abetting a fraudulent transfer because the provision in question "was not intended to serve as a vehicle by which a creditor may bring a suit against a non-transferee party...for monetary damages arising from the non-transferee party's alleged aiding and abetting of a fraudulent money transfer." Id. at *4. In so ruling the Court explained that what the legislature intended by the catch-all phrase was "to facilitate

_____

[5] Plaintiff's Response Memorandum, p.27.

16

the use of other remedies provided in the statute, rather than creating new and independent causes of action such as aider and abettor liability." Id. at *3.

The Florida Supreme Court's decision in Freeman mandates dismissal of Count IX. Freeman makes clear that §726.108 does not permit recovery of tort damages from a bank which is alleged to have merely aided and abetted a debtor's alleged fraudulent transfer. Id. This is the case even where, as here, it is alleged that the non-debtors conspired with the debtor to violate Florida's Uniform Fraudulent Transfer Act. Id. Accordingly, the undersigned respectfully recommends Count IX of the Amended Complaint be dismissed for failure to state a claim.

## Count X-Interference With Property

Count IX of the Amended Complaint is styled as a claim for interference with property. As Defendants correctly observe, recognizes, there is no recognized cause of action called "interference with property."   Plaintiff concedes this fact in her Response Brief and attempts therein to modify her claim to one of unjust enrichment. Plaintiff's Response in Opposition, p. 28.   To properly state a claim for unjust enrichment the Amended Complaint must at the very least refer to "unjust enrichment" or "implied contract" by name.   Failure to so allege violates Rule 8(a)'s notice requirements. Accordingly, the undersigned respectfully recommends Count X of the Amended Complaint be dismissed without prejudice and with leave to amend the complaint.  In accordance with the above and foregoing it is hereby,

**RECOMMENDED** that Defendants' Motion to Dismiss the Amended Complaint Pursuant to federal Rules of Civil Procedure 12(b)(6) and 9(b) (D.E. #39) be **GRANTED** in accordance with the terms hereof.

The parties have ten (10) days from the date of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Donald M. Middlebrooks, United States District Judge.  Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein.  LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

**RESPECTFULLY SUBMITTED,** this 3rd day of May, 2004, in Chambers, at West Palm Beach, Florida.

LINNEA R. JOHNSON
UNITED STATES MAGISTRATE JUDGE

CC: Hon. Donald M. Middlebrooks
     Jane W. Moscowitz, Esq.
     Danforth Newcomb,Esq.
     Barry William Levine, Esq.
     Brian B. Joslyn, Esq.
     David William Boone, Esq.